E-FILED
Monday, 26 October, 2026 02:43:09 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| JOSHUA KAMER,<br><br>Plaintiff,<br><br>v.<br><br>NOAH WYLIE STREETER LANDVATTER, and ESTES EXPRESS LINES,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 26-cv-1277 |

**ORDER AND OPINION**

Now before the Court is Defendant Estes Express Lines' Motion to Dismiss Count III of Plaintiff Joshua Kamer's Complaint which alleges a claim for direct negligence against Estes. (D. 10). For the reasons stated below, Defendant's [10] Motion to Dismiss is GRANTED and Count III is dismissed without prejudice.

## I. BACKGROUND

In the early hours of July 11, 2024, Plaintiff Joshua Kamer was stopped on the right shoulder of southbound Interstate 55 in his 2015 Kensworth truck tractor with his hazards activated. Kamer had pulled over to inspect his vehicle after encountering debris on the interstate. At approximately 1:38 A.M. on July 11, 2024, Defendant Landvatter was traveling southbound on Interstate 55, operating a 2017 International truck tractor pulling double trailers (hereinafter, "Semi-Truck") owned and/or operated by Defendant Estes Express Lines ("Estes"). Near milepost 178 in Money Creek Township, McLean County, Illinois, Landvatter drove off the roadway and struck Kamer's truck tractor, causing damage to Kamer's vehicle and injuring Kamer. According to Kamer, Landvatter admitted at the scene that he had fallen asleep while operating the Semi-Truck.

Kamer filed the Complaint under this Court's diversity jurisdiction, 28 U.S.C. § 1332, alleging negligence against Landvatter (Count I) and bringing claims for respondeat superior negligence (Count II) and direct negligence (Count III) against Estes. Landvatter and Estes have filed answers and affirmative defenses to Counts I and II. (*See* D. 8; D. 9). In its answer to Count II, Estes admits that Landvatter was employed by Estes and was operating a vehicle bearing the Estes name in the course and scope of his employment at the time of the accident. (D. 9, ¶¶ 22–23).

Estes separately moved to dismiss Count III (direct negligence claim) under Federal Rule of Civil Procedure 12(b)(6) for failing to plead sufficient facts to state a plausible claim for negligent hiring, training, supervision, and retention. (*See* D. 10; D. 11). Specifically, Estes argues that Kamer failed to plead sufficient facts to support a plausible inference of (1) negligent hiring and retention; and (2) negligent training and supervision. *See id.* In response, Kamer asks the Court to deny Estes' Motion or, alternatively, hold the Motion in abeyance "because the facts necessary to flesh out the particulars of Count III" are exclusively within Estes' possession and control. (D. 12). This Order follows.

## II. JURISDICTION & VENUE

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). A federal court has authority to hear a case under either its federal-question jurisdiction or its diversity jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). Diversity jurisdiction exists under § 1332(a) when there is complete diversity between the parties and the amount in controversy exceeds $75,000.00. *Arbaugh*, 546 U.S. at 513 (citing 28 U.S.C. §

1332(a)). Complete diversity exists where no plaintiff or defendant are citizens of the same state. *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 636 (7th Cir. 2021). For diversity purposes, the citizenship of a natural person is determined by the person's domicile, or where they reside. *Id.* at 634–35; *see also Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir. 1993) (explaining "domicile in law" means where the person is physically present and intends to remain indefinitely). When a party is a corporation, it is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *see also Qin v. Deslongchamps*, 31 F.4th 576, 579 (7th Cir. 2022). The party invoking diversity jurisdiction has the burden of proving its existence. *Dalton v. Teva N. Am.*, 891 F.3d 687, 690 (7th Cir. 2018).

Here, complete diversity exists between the parties as Kamer resides in Arkansas, Landvatter resides in Wisconsin (D. 8, ¶¶ 2), and Estes is a corporation incorporated under the laws of the State of Virgina with its principal place of business in the State of Virginia (D. 9, ¶ 3). The Complaint also sufficiently alleges that the amount in controversy exceeds $75,000.00. (D. 1, ¶ 4). Accordingly, subject matter jurisdiction over this case exists under 28 U.S.C. § 1332. (*See also* D. 8, ¶ 5; D. 9, ¶ 5). Venue in this Court is also appropriate under 28 U.S.C. § 1391(b)(2), as the events giving rise to the claims occurred in McLean County, Illinois. *Id.* at ¶ 6.

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of a motion to dismiss is not to resolve the merits of a claim but instead tests the sufficiency of the allegations in a complaint. Courts must determine whether, after treating all allegations in the complaint as true and drawing factual inferences in the plaintiff's favor, the plaintiff has stated a claim for relief that is plausible on its

face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Kahn v. Walmart Inc.*, 107 F.4th 585, 593–94 (7th Cir. 2024). A claim has plausibility when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft*, 556 U.S. at 678); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Bilek v. Fed. Ins. Co*., 8 F.4th 581, 586–87 (7th Cir. 2021). Making this plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011).

## IV. DISCUSSION

Under the *Erie* doctrine, a federal court sitting in diversity applies federal procedural law and state substantive law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Cogswell v. CitiFinancial Mortg. Co.*, 624 F.3d 395 (7th Cir. 2010). To determine which state's substantive law applies, we look to the forum-state's choice of law rules. *See Harford Accident and Indemnity Co. v. Lin*, 97 F.4th 500, 508 (7th Cir. 2024). Here, the parties do not dispute that Illinois law applies. Therefore, Illinois law applies to the substantive issues in this case. *See Donaldson v. Johnson & Johnson*, 37 F.4th 400, 406 (7th Cir. 2022) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits, in this case, Illinois.").

Count III of the Complaint is titled "Direct Negligence (Negligent Hiring, Training, Supervision, and Retention) against Defendant Estes Express Lines." (D. 1, p. 8). Although framed as a single cause of action, in Illinois, negligent hiring and retention are separate causes of action from negligent training and negligent supervision. *See Doe v. Coe*, 135 N.E.3d 1, 14–15 (Ill. 2019). Each theory, however, requires Kamer to plead that Estes' own negligence in hiring,

retaining, training, or supervising Landvatter proximately caused Kamer's injury. *See Vancura v. Katris*, 939 N.E.2d 328, 343 (Ill. 2010).

**A. Negligent Hiring and Retention**

An employer's direct liability for negligent hiring and retention is distinct from its *respondeat superior* liability for the acts of its employees, as it arises from an employer's negligence in "hiring, or retaining in its employment, an employee it knew, or should have known, was unfit for the job so as to create a danger of harm to third persons." *Van Horne v. Muller*, 705 N.E.2d 898, 904 (Ill. 1998). To state a claim for negligent hiring and retention of an employee, a plaintiff must plead:

> (1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury.

*Id.* "[I]t is not enough for the plaintiff to simply allege that the employee was generally unfit for employment." *Id.* at 905. "Rather, liability arises in this context when a *particular* unfitness of an employee gives rise to a particular danger of harm to third parties." *Id.* (emphasis in original). The employee's particular unfitness must have made "the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position." *Id.* at 906.

Here, Count III does not allege any facts from which it could be inferred that Landvatter had a "*particular* unfitness" at the time of his hiring or retention. Specifically, there are no facts that identify a specific condition or history making Landvatter unfit to operate a commercial vehicle. There are also no facts from which it could be inferred that Estes knew or should have known of a "particular unfitness." Similarly, Landvatter's alleged admission after the collision that he had fallen asleep does not, without additional facts, establish that he had a "particular unfitness"

of which Estes knew or should have known when it hired or retained him. Finally, the allegations that Landvatter was generally unfit to operate the Semi-Truck and that Estes somehow should have known this through prior evaluations and screenings are insufficient to state a claim for negligent hiring and retention against Estes.

**B. Negligent Training and Supervision**

The Court next addresses the negligent-training and negligent-supervision claims. Illinois law recognizes negligent training and negligent supervision as distinct causes of action, though both are analyzed under general negligence principles. *See Nat'l R.R. Passenger Corp. v. Terracon Consultants, Inc.*, 13 N.E.3d 834, 839 (Ill. App. Ct. 2014). A negligent-supervision claim focuses on the employer's ongoing oversight of the employee's conduct, whereas a negligent-training claim focuses on whether the employer adequately trained the employee to perform the employee's duties safely.

To state a claim for negligent training, a plaintiff must allege that the employer owed a duty to the injured party, breached that duty through inadequate training, and that breach proximately caused plaintiff's injuries. *Id.* at 840; *see also Vancura v. Katris*, 238 Ill.2d 352, 383, 939 N.E.2d 328, 345 Ill.Dec. 485 (2010). To state a cause of action for negligent supervision, a plaintiff must establish that: (1) the employer had a duty to supervise its employee; (2) the employer negligently supervised its employee; and (3) such negligence proximately caused the plaintiff's injuries. *McNerney v. Allamuradov*, 2017 IL App (1st) 153515 (2017); *see also Doe v. Coe*, 135 N.E.3d 1, 15 (Ill. 2019). A claim for negligent supervision does not require proof that the employer had prior notice of the employee's unfitness at the time of hiring. *Doe*, 135 N.E.3d at 15. Under both theories, the plaintiff's injury must still be one that is generally foreseeable to

the employer. *See Glickman v. Main-Niles Assoc. of Special Rec.*, 440 F.Supp.3d 946, 955 (N.D. Ill. 2020).

Here, Count III generally alleges that Estes inadequately trained and supervised Landvatter, failed to prevent fatigued driving, and failed to monitor compliance with hours-of-service requirements. (D. 1, ¶ 32). But the Complaint does not identify any deficient training, omitted supervisory measures, inadequate policies or procedures, monitoring failures, or prior conduct by Landvatter indicating fatigue-related risk. (D. 1, ¶ 32). There are no facts that explain what training and supervision Estes should have provided, or facts connecting any omissions by Estes to the accident. Ultimately, Count III's allegations offer only conclusory statements that Estes had a duty to supervise and train Landvatter during the relevant time and that a lack of supervision and training caused the accident. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)). Kamer also fails to support these allegations with factual content that would allow the Court to draw the reasonable inference that Estes' lack of supervision and training proximately caused the accident.

Additionally, Kamer's injury must have been foreseeable to Estes. While there are allegations that the accident occurred at 1:38 A.M. and that Landvatter admitted that he fell asleep; the time of the collision and Landvatter's alleged admission do not explain why Estes should have foreseen this accident. he has not alleged how Estes' supervision and training fell short and could have foreseen Landvatter's accident. For these reasons, the allegations are insufficient to state a claim for negligent training or negligent supervision.

**C. Deferring Ruling**

Kamer alternatively argues that Estes' Motion to Dismiss is premature because facts material to Count III are within Estes' exclusive possession and control and asks the Court to defer ruling on the Motion after the completion of discovery. (D. 12, pp. 4–5). But the Court's analysis under Rule 12(b)(6) is limited to allegations in the complaint. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *see also Berk v. Choy*, 607 U.S. 187, 188, 146 S.Ct. 546, 223 L.Ed.3d 463 (2026) ("When evaluating whether a plaintiff has stated a claim, the court cannot consider "matters outside the pleadings.") (citing Rule 12(d)). Evidence obtained in discovery therefore could not be considered in resolving the present motion, and deferring a ruling would not cure the current pleading deficiencies.

Courts ordinarily afford a plaintiff at least one opportunity to amend after dismissal under Rule 12(b)(6). *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. and Northwest Ind.*, 786 F.3d 510, 519 (7th Cir. 2015). Here, however, Kamer represents that Estes possesses the information necessary to plead facts supporting his claims for negligent hiring, retention, training, and supervision against Estes. As a result, immediate amendment would not remedy the identified deficiencies. Therefore, the Court will dismiss Count III without prejudice at this time. To the extent discovery properly conducted on the remaining claims reveals facts supporting one or more of the dismissed theories, Kamer may then seek leave under Rule 15 to filed an amended complaint.

## V. CONCLUSION

For the reasons stated above, Defendant Estes Express Lines' [10] Motion to Dismiss is GRANTED, and Count III is DISMISSED WITHOUT PREJUDICE. The Clerk is further DIRECTED to STRIKE Defendant Estes Express Lines' [13] Reply in Support from the docket

as improperly filed without leave of Court. *See* CDIL L.R. 7.1.(B)(3) ("A reply to the response is only permitted with leave of Court. The motion for leave must be filed within 7 days after service of the response and include the proposed reply as an exhibit.)

ENTERED October 26, 2026.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge